## STOCKING *versus* TOULMIN.

1. Where one is sued, as the maker of a promissory note, or bond, by an assignee, no doubt can exist, under our statutes, as to the right of the defendant to *set-off* any proper demand which he may have held against the *payee*, at any time previous to notice of the assignment, by the latter.
2. But the right of *set-off*, against a note or bond, under our statutes, does not exist for demands subsisting against intermediate assignees, through whose hands such note or bond may have passed, by blank indorsement, or otherwise.

This was an action of assumpsit, prosecuted by the plaintiff in error, on a promissory note. The note had been executed by Toulmin, in favor of Robert and William Armstrong; by the payees transferred, in blank, to one Chandler, and by him assigned to the plaintiff. As a defence, Toulmin insisted on demands, subsisting in his favor, against Chandler, previous to the assignment from Chandler to the plaintiff.

The court below charged, that such claims were proper off-sets—which was assigned as error here.

*Hitchcock,* for plaintiff—*Elliott, contra.*

SAFFOLD, J.—The action was assumpsit on a promissory note, made by the defendant in error, (who was also defendant below,) payable to Robert and William Armstrong, or order, for five hundred dollars. Soon after it was executed, the payees transferred the note by a blank indorsement, to Stephen Chandler, who transferred it for a valuable consideration, to the plaintiff, before it was due, and without indorsement.

The defendant, having given notice of· a set-off, gave in evidence notes, &c. due him from Chandler, with proof that the note sued on, had been transferred to him previously to its assignment to the plaintiff—one of which notes was drawn payable to Herndon, or bearer; the others in favor of the defendant. Further proof was also made, that the defendant was the legal owner of these evidences of debt, previous to notice of the transfer of the note from Chandler to Stocking.

The plaintiff, requested the court to instruct the jury, that the defendant could not set off the demand he held against Chandler. But the court refused the instruction, and instructed the jury that they might set off against the plaintiff's demand, all the demands the defendant had proved he had been in possession of, against Chandler, previous to notice, that the note had been transferred to the plaintiff. These instructions are assigned as erroneous.

Where one is sued, as maker of a promissory note or bond, by an assignee, no doubt exists, under our statues, as to the right of the defendant to *set-off* any proper demand which he may have held against the payee, at any time previous to notice of the assignment by him.

The more difficult question is, does this right of *set-off* equally exist, in reference to demands, held against intermediate assignees—against those, through whose hands it may have passed by blank indorsements or otherwise?

To concede the right, as respects demands against a plaintiff, holding as a subsequent indorsee, is not decisive of this question. The statute " concerning defalcation," of 1799, appears, at least, to embrace a

case of that kind. It provides, that, "if two or more, dealing together, be indebted to each other, upon bonds," "*promises*," &c., "and one of them commence an action in any court, if the defendant cannot gainsay the deed, bargain, or assumption upon which he is sued," he shall be allowed the benefit of any proper subject of set-off.- The only construction which this statute will admit of, or which this court has ever given it, is, that such *defendant* shall be entitled to any set-off, which he held against the *plaintiff*, at the institution of the suit. The language of the statute, as above, quoted, that if two or more, dealing together, be indebted to each other, "and one of them commence an action," the defendant shall be allowed his set-off, renders it material, in conferring the right of set-off, that the *same assignee* of the note or bond, against whom the defendant has a counter demand, shall *sue upon it.* If, instead of suing upon it, the assignee transfer it to another, the latter assignee may have no knowledge of the claim of set-off. If it be farther assigned, the last assignee may have no knowledge, (the assignment being blank,) that the person against whom the set-off exists, ever held the paper. It would, also, be but a natural occurrence, if, under such a rule of practice, the maker of the note should purchase up demands on the intermediate assignee, to be used as a set-off—but, of which such assignee had no notice, until after he had further assigned it: or, if the counter demands should be procured after the transfer of the note, but betore notice to the maker—the principle would be the same.

Again, as contended in argument, if this be the rule of practice, the maker of a note, say for six

hundred dollars, which has been assigned a half dozen times, may have purchased up demands of one hundred dollars, against each of the assignees, while holding the paper, or afterwards, before notice of the farther transfers, and when sued by the last assignee, may avail himself, by way of set-off, of all these several demands—when, five of the six persons against whom they exist, are apparently strangers to the transaction; and, in fact, had considered themselves, subsequent to their respective assignments, without the least interest in the subject.

The consequence of this rule would be not only the danger that much of the litigation would be *ex parte*, as the plaintiff might be ignorant of all the circumstances of the demands urged as *sets-off;* and the persons ultimately responsible for them, equally ignorant of the pendency of the contest; but the allowance of the sets-off would lay the foundation for as many perplexing causes of action as there might be persons whose debts would be thus discounted. They of course should be held responsible to the assignee whose debt had been thus scaled or defeated; but before being so liable, they must in common justice, have an opportunity of contesting the claims of set-off, which could not be insured, and without which the judgment against the assignee could be no evidence against them. Thus it appears, that according to the principle alluded to, no honesty of purpose between assignor and assignee, combined with ordinary prudence, would secure the latter against disappointment and injustice.

Yet, however inexpedient we may consider the principle, if a fair construction of the laws applicable to this subject, entitles the defendant to the set-off, this

court has no power to deny it. For the defendant it is contended, that the "act concerning the assignment of bonds, notes, &c. and for other purposes," passed in 1812, secures this right of set off.

The substance of this act, so far as it affects this question, is this, that all bonds and notes may be assigned by indorsement; and the assignee may sue in his own name, and maintain any action which the obligee or payee could have maintained thereon, previous to assignment; and in all actions to be commenced upon any such assigned bond or note, the defendant shall be allowed the benefit of all sets-off (discounts and payments) possessed (had or made) against the same, previous to notice of the assignment, in the same manner as if the same had been sued on by the obligee or payee therein. It is also insisted that the decisions of this court, in reference to the latter statute, in the cases of *Richardson* vs. *Farnsworth,* and *Ferguson* vs. *Hill,* recognize the [1 Stew.55.] right of defence against any indorsee, on the ground of an existing set-off, against any intermediate holder of the note, in the same manner as if it were against the payee of the note. In determining the construction of the statute, it is necessary strictly to examine its language, as well as probable intent. It declares in substance, that in all actions on assigned notes, the *defendant shall be allowed the benefit of all sets-off, had or possessed against the same, previous to notice of the assignment, in the same manner as if the same had been sued on by the payee therein.* This language is conceived to sustain the argument, that the *sets-off* alluded to, are such as might exist against the demand in its original state—such as had arisen against the payee, while he retained the note, or before notice to

the maker, of the transfer. This interpretation is sanctioned by the clause which allows the set-off, in the same manner as if the note had been sued on, by the payee therein.

Had the legislature intended otherwise, it may well be presumed they would have declared the intention more explicitly. All doubt could have been removed by some familiar expressions—as, that the defendant should be allowed all sets-off possessed against the same, or against any subsequent holder, previous to notice of the assignment, by the payee, or any indorsee.

Then, for the reasons that the statute has avoided the use of the more appropriate language, to confer the right of set-off, as allowed by the Circuit court; that the right would operate a farther innovation of the common law regulations of commerce; and, that the inexpediency of the innovation is believed to have been illustrated—the more limited construction is the only one we are authorised to give the statute.

But, it is contended, that some of our former decisions, referred to, have gone farther. My purpose will now be to show the contrary. Let it be recollected, that the defence of *set-off* is, in its nature, essentially different from that of *payment*, or any satisfaction, or *modification* of a contract. The debts or demands to be offered as sets-off, admitting them to be valid, and subsisting claims against the plaintiff, or against the payee, in case of an assigned note; yet they have no application to, or connection with the note sued on, except in the discretion of the defendant. He may use them as a set-off, or decline doing so, and make them the ground of a separate action

against the plaintiff; or transfer them, at his election. If he be *insolvent,* or have any other motive to withhold the set-off, he may be expected to do so, and the plaintiff has no voice in it.   It is so far different with respect to payment, or any alteration of a contract, that, to effect either, the agreement of both is necessary; and, when fairly made, it becomes identified with the contract, and either party can insist upon it, with some exceptions, in favor of negotiable paper.   According to the common law, the maker or acceptor of a negotiable instrument, after assignment, could not impeach the equity thereof, if the assignment was made before the maturity, while no suspicion attached to the paper.   But, after maturity, if the holder, instead of demanding payment, or on refusal of payment, should transfer the paper, the circumstances are deemed so suspicious, as necessarily to put the obligee on enquiry, and subject him to the equity of the demand.

Our statute of 1812, referred to, has varied the law, in this respect, on instruments embraced by it; and authorises the makers of bonds, notes, &c., to impeach the consideration or equity of the demands, (or, in the language of the statute, to avail themselves of " any *discounts,*" against them,) though they were assigned before maturity, and regardless of the number of assignments.   It also entitles such maker to the benefit of all sets-off, which he had, or possessed against the payee, previous to notice of the assignment.   This is considered, by this court, the true construction of the statute.

In the case of *Richardson* vs. *Farnsworth,* it appeared, than a mercantile firm, (composed of Wheeler, Gay and Gruggs,) were the true owners of a note

assigned to them by a blank indorsement, and that
they had received *payment* of the note; that, long
after the payment, the name of Farnsworth had
been inserted in the blank indorsement, for the pur-
pose, alone, of excluding the evidence of payment;
and, that Farnsworth had no interest in the note, be-
ing but a nominal plaintiff. The court held, that, un-
der the statute of 1812, the defendant was authoris-
ed to avail himself of any *payment, made to any per-
son to whom the note had been transferred, or who was
otherwise legally authorised to receive it.*

Had Farnsworth been the real assignee, without
notice of the payment made, as aforesaid, the defen-
dant, according to the statute, would still have been
entitled to the defence, as a *"payment,"* made to one
authorised to receive it, and before notice of the as-
signment to another. And, in that case, even a set-
off against the mercantile firm, would have been ad-
missible, as they were the covert, though real plain-
tiffs.

The other case, (*Furguson* vs. *Hill,*) maintains on-
ly an analogous principle. There Furguson, to whom,
or bearer, the note was made payable, transferred it,
by delivery, to Robinson, who, for a sufficient consi-
deration, contracted with Hill, to allow him an ex-
tended term of credit, on the note: afterwards, in vio-
lation of the agreement, suit was brought on the
note, before the expiration of the time, in the name
of Furguson, for the use of De Jarnett. Hill hav-
ing pleaded this agreement, in *abatement* of the suit,
the plaintiff demurred to the plea; but the Circuit
court sustained the plea, and this court affirmed
the judgment. The effect of parol contracts, in va-
rying the import of written ones, was then consider-

ed, and it was said, the verbal contract, if made *at the time* of executing the written one, could not prevail—for, to do so, it must contradict evidence, or vary an agreement of higher dignity, purporting to be the same. But, it was also held, that a *subsequent* parol agreement was distinct from the former; and, if, on sufficient consideration, might control it: and, further, that Robinson, having been the owner and legal holder of the note, was competent, during the time, to receive payment, and release the demand, or vary the contract, at discretion; consequently, that respecting it, which might be made; and that the the maker was entitled to the benefit of any contract subsequent suit, by the payee, for the use of another, could not impair the right.

It does not follow, in the language or reason of the statute, that the right of *set-off* exists, for demands against intermediate assignees, whose interests have ceased. On the contrary, as shown, the principle cannot be tolerated.

We are of opinion, the judgment below must be reversed, and the cause remanded.

LIPSCOMB, C. J., not sitting.